McKINSTER, RESPONDENT, v. GREAT NORTHERN RAIL-
WAY CO., APPELLANT.

(No. 5,129.)

(Submitted April 9, 1923. Decided April 25, 1923.)

[118 Pac. 87.]

*Railroads—Livestock—Negligence in Transportation—Evidence
—Insufficiency—Appeal from Nunc Pro Tunc Judgment—
Time.*

Appeal and Error—Appeal from Judgment *Nunc Pro Tunc*—Time.
1.   Where an appeal was taken at once from an amended judgment
entered *nunc pro tunc* as of the date of entry of the original judg-
ment, more than a year prior thereto, a motion to dismiss the ap-
peal on the ground that it was not taken within time does not lie.

Jury—Preponderance of Evidence.
2.   The jury, being the sole judge of the credibility of witnesses,
may properly give credence to the testimony of one witness and dis-
regard that of four opposing witnesses on a question at issue.

Railroads—Livestock—Negligence   in   Transportation—Evidence—Insuffi-
ciency.
3.   In an action against a railway company for damages due to
negligence in transporting cattle from the place designated in the
way-bill where they had some protection from severely cold weather
then prevailing, to a station twelve miles distant, causing some of
them to freeze in transit between the two places, evidence *held*
insufficient to show that their loss was due to freezing or that they
were frozen between the time they were removed from shelter to
the time they arrived at the station where plaintiff wanted them,
and therefore insufficient to establish plaintiff's cause of action.

*Appeals from District Court, Cascade County; J. B. Leslie,
Judge.*

ACTION by Harry McKinster against the Great Northern
Railway Company. From a judgment for plaintiff and an
order conditionally denying defendant's motion for a new trial,
defendant appeals. Reversed and remanded.

2.   Liability of carrier for injury to animals caused by exposure, see
note in Ann. Cas. 1912C, 922.

*Mr. I. Parker Veazey, Jr., Mr. W. L. Clift* and *Mr. R. H. Glover,* for Appellant, submitted a brief; *Mr. Clift* argued the cause orally.

We contend that plaintiff has failed to prove the negligence alleged and that the deaths of the cattle were the result of freezing, as averred in his complaint, and the verdict being without support in the evidence, it should be set aside and a new trial granted, or judgment ordered in favor of defendant. (*Gleason* v. *Missouri River Power Co.,* 46 Mont. 395, 128 Pac. 586; *Pierce* v. *Great Falls & Canada Ry. Co.,* 22 Mont. 445, 56 Pac. 867; *Raas* v. *Sharp,* 46 Mont. 474, 128 Pac. 594; *Casey* v. *Northern Pac. Ry. Co.,* 60 Mont. 56, 198 Pac. 141.)

*Mr. R. E. Crowley* and *Mr. W. W. Patterson,* for Respondent, submitted a brief.

MR. CHIEF COMMISSIONER FELT prepared the opinion for the court.

On March 15, 1921, the plaintiff in this action recovered judgment against the defendant upon a verdict of a jury in the amount of $1,125, with interest at the rate of eight per cent per annum from the first day of February, 1917. The defendant moved for a new trial upon all the statutory grounds. On March 14, 1922, it appealed from the judgment as entered on March 15, 1921. On September 4, 1922, the trial court granted the defendant's motion for a new trial unless the plaintiff, within thirty days from that date, file his written consent to remit $300 of the verdict and judgment, in which event it was ordered that the motion for a new trial be denied. On the twenty-eighth day of September the plaintiff filed his written consent to remit the amount from the verdict and judgment required by order of the court. On November 6, 1922, the court entered a judgment upon the verdict reduced in the sum of $300, which amended judgment was entered *nunc pro tunc* as of March 15, 1921. On November 8,

1922, defendant appealed from the amended judgment and from the conditional order denying its motion for a new trial.

Counsel for the respondent have moved to dismiss the appeals taken by appellant. Their contention is that the judgment actually entered on March 15, 1921, became *functus officio* upon the entering of the amended judgment. Hence there was nothing to appeal from, and the first appeal must fail for that reason alone. At the same time it is argued that, by the ingenious arrangement of entering the amended judgment *nunc pro tunc* as of March 15, 1921, the appeal taken on November 8 was rendered too late, although taken two days after the actual entry of the judgment. The contention of respondent is ingenious but cannot be sustained. We recommend that the motion to dismiss the appeal be overruled.

The plaintiff recovered below for the value of sixteen cows and six calves which were lost as the result of certain alleged acts of negligence on the part of the defendant. The appeals are based solely upon the insufficiency of the evidence to justify the verdict. The animals in question were among four carloads shipped over the defendant's road from Craig, Montana, to Vaughn, Montana. They left Craig at about 5 P. M. on January 21, 1917, and arrived at Great Falls at 10:15 of the same day. The way-bill designated the latter as the point of destination although the plaintiff's purpose was to move the cattle to Vaughn. The evening of the 21st was bitterly cold and stormy. The same condition prevailed at Great Falls when the cattle arrived there. The plaintiff sought the night yardmaster and discussed the disposition to be made of the cattle. For temporary protection the cars were placed on the caboose track with a tight board fence on one side and a string of box-cars on the other. The yardmaster called up the local agent of defendant, who had retired for the night, and obtained authority over the telephone to change the destination in the way-bill and divert the four cars on to Vaughn. The yardmaster, the assistant yardmaster and the witness Cleary, who was with the plaintiff assisting him in caring for the stock,

all testify that this was done at plaintiff's request.   The plaintiff denies this.   The shipment left Great Falls at 5:30 A. M. on the 22d, arriving at Vaughn an hour later.   There they stood on the track until shortly after 8 o'clock, when they were unloaded by C. M. Dorrance, who was intended to receive them and taken to his ranch about a mile and a half distant. The work of unloading and moving the cattle to the ranch occupied the greater part of the forenoon.   Two cows and six calves were found dead in the cars at the time they were received at Vaughn and twelve or thirteen more cows and a bull died within twenty-four hours after they arrived at the ranch.

The act of negligence complained of and upon which the plaintiff seeks to establish liability on the part of the defendant was the diversion of the cattle from Great Falls to Vaughn. He complains that this diversion subjected the animals to greater exposure, by reason of which they were frozen and died.   He admits that the cattle were taken to the point where he wanted them, and that no liability whatever rested upon the defendant up to 5:30 A. M. of the 22d.   His only complaint is that they were not held in Great Falls until he could decide whether to ship them to Vaughn or unload at Great Falls and drive them to Vaughn after feeding them.   He contends that by reason of the tight board fence on one side and the string of box-cars on the other the cattle had better protection from the inclement weather at Great Falls, and would not have perished had they been left there.   Since the cattle were only away from feed for a period of twenty-four hours from the time they left one ranch until they reached another, no serious contention is made that damage resulted by reason of the cattle being deprived of feed for an unreasonable time.

[2]   To support his claim that the diversion on the part of the defendant was wrongful, the plaintiff relies solely on his own testimony.   Against this is opposed the testimony of the plaintiff's helper and companion on the trip and three employees of the defendant.   The latter testify that, at the plaintiff's request and some personal inconvenience to themselves, they

obtained authority to change the way-bill and divert the cattle to Vaughn on the early train. Since the jury are the sole judges of the credibility of witnesses, it must be conceded that they were authorized to believe the one and disregard the testimony of the other four. Hence we must assume that the wrongful diversion was sufficiently established.

It yet remains for the plaintiff to prove by a fair preponderance of the evidence that the loss of the plaintiff's cattle was due to freezing, and that this freezing occurred between 5:30 A. M. and 8 A. M. on the 22d of January, by reason of being removed from their protection of the board fence and string of box-cars. In neither respect has the plaintiff established his case.

[3]

To prove that the cattle died from freezing, the plaintiff offered the testimony of the two Dorrance boys, who skinned the dead cattle. They testified that they found the bodies of the animals frozen when they went to skin them. They did not state how soon they were skinned after death. There was nothing from which it might be inferred that the freezing caused the death. It would be just as reasonable to assume that they froze after death or while lying on the ground dying from other causes. They concede that the cattle which died were the thinnest and weakest in the herd, but say they do not know why they should have died if they were not frozen. In this connection it may be observed that this shipment were the "cut backs," the weakest and thinnest of several hundred of the plaintiff's cattle. The stronger ones had been trailed overland. It must also be observed that, while this particular herd was being driven from the plaintiff's ranch to Craig, a distance of only nine miles, at least five were too weak to travel and were left behind to die. Two of the men who assisted in driving the cattle placed the number that were thus abandoned at a much larger figure. The Dorrance boys further give as a reason for believing that the cattle died as the result of freezing that they found the legs of some of them bloodshot when they skinned them. There was no evidence to prove that freez-

ing would cause the legs to be bloodshot, or that other causes might not produce the same result.

But conceding that the evidence proved that freezing contributed to the death of these cattle, there was absolutely no evidence upon which to base the assumption that the freezing occurred after 5:30 A. M. on January 22. There was no evidence to prove that that morning was bitterly cold. C. M. Dorrance, who testified from his recollection of four years before, said: "I believe it was cold. I wouldn't say as to what the night was before that, but this was a clear, cold day. I would imagine it was down around zero. I can't recall the weather the night previous; it was pretty cold all along there."

There is no witness who testified clearly as to the temperature at any given hour of the 22d. It is clearly established without contradiction that the 22d was much milder than the 21st. Plaintiff's Exhibit "C," a letter from the United States Department of Agriculture Weather Bureau Office at Helena, states that the records of that office show "a decided rise of temperature that took place over the eastern slope of Montana on January 22, 1917." Figures contained in the letter taken from four stations maintained at points through which the cattle passed during the time in question show an average temperature of six degrees below zero on the 21st and seventeen degrees above zero on the 22d. Thus, from the plaintiff's own evidence, it plainly appears that the cattle were subjected to more severely cold weather during the evening and night of the 21st than on the early morning of the 22d. They had no more protection while traveling in the open cattle cars from Craig to Great Falls, a distance of fifty-two miles, than while traveling the twelve miles from Great Falls to Vaughn. No further discussion of the evidence is necessary. The plaintiff wholly failed to establish a cause of action against the defendant.

We therefore recommend that the motion to dismiss the appeals be denied, and that the judgment and order overruling the motion for a new trial be reversed and the cause remanded

to the district court of Cascade county, with directions to grant the defendant a new trial.

PER CURIAM: For the reasons given in the foregoing opinion, the motion to dismiss the appeals is denied, and the judgment and order appealed from are reversed and the cause is remanded to the district court of Cascade county, with directions to grant the defendant a new trial.

*Reversed and remanded.*